## State of Vermont v. Michael L. Hooper

[557 A.2d 880]

No. 87-119

Present: **Allen, C.J., Peck, Dooley and Morse, JJ., and Barney, C.J. (Ret.), Specially Assigned**

Opinion Filed December 16, 1988

Motion for Reargument Denied January 26, 1989

*Joel Page, Lamoille County State's Attorney*, Hyde Park, for Plaintiff-Appellee.

*Edwin W. Free, Jr.*, of *Richard E. Davis Associates, Inc.*, Barre, for Defendant-Appellant.

**Dooley, J.** Defendant, who was convicted of sexual assault pursuant to 13 V.S.A. § 3252(3), appeals his conviction. Defendant argues that the trial judge abused his discretion in excluding allegedly relevant scientific evidence. As to part of the evidence, a semen sample, we find that the trial court made a correct evidentiary ruling. As to the other part of the evidence, the absence of defendant's hair on the victim's body, we find that the defendant failed to raise and preserve the issue below. Therefore, we affirm.

The sexual assault occurred late on the night of May 15, 1986, when defendant gave the victim a ride to her guardian's home in Wolcott. According to the victim's testimony, defendant took her onto a little used side road where he raped and then left her.

The evidence at issue in this appeal derived from medical examinations conducted on both the victim and the defendant. Both examinations included the taking of blood samples, head and pubic hair samples, a saliva sample and an examination of clothing. In addition, the victim was examined for traces of seminal fluid.

Seminal fluid was found on the victim. The laboratory determined that because of the blood type of the victim, the defendant could not be identified as the source of the seminal fluid. The victim's blood type "masked" the antigens which would have identified defendant's semen. The laboratory sent hair samples taken from the victim to the Federal Bureau of Investigation in Washington. The FBI found that all the hairs, except one, were similar to the hairs of the victim. The one hair that was not simi-

lar was found in the victim's sock, and it was not similar to the hairs of the defendant.

The State made three motions in limine.* The first was to exclude evidence relating to seminal fluid taken from the victim. The second was to exclude evidence relating to the reputation of the victim with respect to her sexual conduct. The third motion was to prevent the defendant's brother from testifying as to his opinion of the reputation of the victim with respect to her sexual conduct. The State disclosed it would not seek to admit evidence of the presence of semen on the body of the victim because the victim had sexual intercourse with her boyfriend only a few hours before. The State did not move to prevent the defendant from introducing evidence of the FBI conclusions on the hair samples.

At the motion hearing held on December 16, 1986, defendant argued that the conclusions by the FBI lab relating to the hair samples constituted exculpatory evidence. The defendant's contention was that the *lack* of hair similar to defendant's head or pubic hair could arguably show that he did not commit the crime. Defendant made no offer of proof, but did ask for a continuance to pursue this theory. Defendant also argued that the discovery of seminal fluid, which could not be positively identified as defend-

---

* The State's motions were appropriate ways to bring the issues before the court prior to trial. To "[e]ncourage counsel to bring motions *in limine* on evidentiary questions . . . will prevent disruptions at trial which could render the proceedings incoherent to the jurors." Judge's Manual for the Managment of Complex Criminal Jury Cases § 2.2 (1982). These motions have become standard in trial practice. In *Robinson* v. *State,* 309 N.E.2d 833 (Ind. Ct. App. 1974), the Indiana Court of Appeals described the purpose of such motions:

> Literally, 'in limine' means 'On the threshold; at the outset.' Ballentine, Ballentine's Law Dictionary 628 (1969). . . . A 'motion in limine' is a term used to describe a written motion which is usually made before or after the beginning of a jury trial for a protective order against prejudicial questions and statements. . . . "The purpose in filing a motion in limine to suppress evidence or to instruct opposing counsel not to offer it is to prevent the asking of prejudicial questions and the making of prejudicial statements in the presence of the jury with respect to matters which have no proper bearing on the issues in the case or on the rights of the parties to the suit. It is the prejudicial effect of the questions asked or statements made in connection with the offer of the evidence, not the prejudicial effect of the evidence itself, which a motion in limine is intended to reach. . . ."

*Id.* at 854-55 n.17 (quoting *Bridges* v. *City of Richardson,* 163 Tex. 292, 293, 354 S.W.2d 366, 367 (1962)).

ant's, should be admissible to show that defendant did not commit the crime.

The court granted defendant's motion to continue, due to the "late disclosure and [lack of] opportunity to depose the State's expert witness. . . ." The court went on to say that it was not persuaded by the argument about the hair samples but defendant was free to pursue his theory since a continuance was otherwise necessary. The court then granted the State's motion in limine. The ruling was thereafter reduced to writing. It stated that the presence of semen on the victim was irrelevant since it could not be determined that the semen was defendant's. The ruling never mentioned the analysis of the hair samples.

At no point during the trial did defendant raise the issue of the medical reports or attempt to offer evidence or make an offer of proof on the subject. Although the State relied upon the court's rulings on the various motions in limine during the trial, the defense did not attempt to pursue any of the evidence covered by the motion. Significantly, the defense did not make any offer with respect to the FBI analysis of the hair.

Defendant makes three main arguments on appeal: (1) He should have been allowed to introduce evidence of the results of the FBI analysis of the hair found on the victim since it tends to show that defendant was not guilty; (2) he should have been allowed to introduce evidence that semen was found on the victim since the presence of semen, properly explained, also tends to exonerate the defendant; and (3) he should have been allowed to show that the victim had sexual intercourse with her boyfriend shortly before the alleged rape to offer an explanation for the presence of semen. We do not reach the third issue because it hinges on defendant being able to show the presence of semen in order to offer evidence to explain its presence. Since we find that the exclusion of the evidence of semen was proper, the explanation for its presence is also inadmissible.

■ Defendant's first claim of error is not properly before this court. Defendant's evidence about the analysis of the hair samples was not covered by the motion in limine and, therefore, was not excluded by the grant of that motion. Defendant made no attempt to raise his theory about the hair samples during his trial. Even though, at the motion hearing, the trial court expressed its doubt that the evidence regarding the hair samples would be admissible, it did not rule that it was inadmissible. In

fact, the trial court granted defendant's motion to continue in part to allow him to pursue his theory. Since defendant never availed himself of the opportunity to present evidence to prove his argument during trial, this Court has nothing before it to review. Absent plain error, this Court will not review an issue raised for the first time on appeal. V.R.E. 103(a)(2), (d) (error may not be predicated on exclusion of evidence absent an offer of proof unless there was plain error "affecting substantial rights"); *State* v. *Peters,* 147 Vt. 390, 391-92, 518 A.2d 28, 29 (1986); see also *State* v. *Nash,* 144 Vt. 427, 433, 479 A.2d 757, 760 (1984). Defendant has not alleged, nor do we find, plain error in this case. In the absence of an offer of proof, we are unable to evaluate the probative value of the evidence and thus are unable to find that a substantial right was affected.

■ Defendant's second claim of error is that it was an abuse of discretion for the trial court to exclude the evidence of semen based on the inconclusive nature of the lab analysis. See V.R.E. 401, 402. In *State* v. *Foy,* we said "[t]his Court will not interfere with discretionary rulings that have a reasonable basis." 144 Vt. 109, 115, 475 A.2d 219, 223 (1984). "[T]o demonstrate an abuse of discretion, the burden is on the party claiming error to show that it has been withheld altogether, or exercised for some clearly untenable reason." *Id.*

Under V.R.E. 401, " '[r]elevant evidence' means evidence having any tendency to make the existence of any fact . . . of consequence . . . more probable or less probable than it would be without the evidence." The test of relevancy is very broad. See Reporter's Notes, V.R.E. 401 (relevant facts are not limited to those formally put in issue"; and include germane propositions, full range of background facts, and propositions pertinent to credibility). On the other hand, "[i]n order for evidence to be relevant . . . it must tend to support the proposition for which it was offered. *State* v. *Dragon,* 130 Vt. 334, 341, 292 A.2d 826, 831 (1972). The trial judge is given broad discretion in deciding questions of relevancy. See Reporter's Notes to V.R.E. 401; see also *In re Nash,* 149 Vt. 63, 66, 539 A.2d 989, 991 (1987): *State* v. *Raymond,* 148 Vt. 617, 622-23, 538 A.2d 164, 167-68 (1987).

■ We agree with the trial court that evidence of the presence of semen on the victim was not relevant when offered by the defendant in view of the laboratory analysis. That analysis determined that it was not scientifically possible to conclude whether

or not the semen came from the defendant because of the masking effect of the victim's blood. Thus, the presence of semen is not probative of defendant's guilt (except possibly to suggest defendant's guilt) or any other fact that is of consequence to the action. Indeed, it appears that the only purpose for the evidence would be to show the victim was sexually active by fitting it within an exception in the rape shield law. See 13 V.S.A. § 3255(a)(3)(B). We cannot countenance such a transparent evasion of the limits of the rape shield law.

Since we find that the proffered evidence is irrelevant under V.R.E. 401, it cannot be admitted into evidence. V.R.E. 402 ("Evidence which is not relevant is not admissable."). See *Raymond,* 148 Vt. at 623, 538 A.2d at 167. The trial court therefore acted within its discretion in excluding the evidence, and we will not disturb its conclusion.

*Affirmed.*